UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LORRY A. W.,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:19-CV-03082-LRS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 14).

## JURISDICTION

Lorry A. W., Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) and Title XVI Supplemental Security Income benefits (SSI) on November 24, 2015. The applications were denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on March 8, 2018, before Administrative Law Judge (ALJ) Timothy Mangrum. Plaintiff testified at the hearing, as did Vocational Expert (VE) Abbe May. On August 1, 2018, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff has a GED and past relevant work experience as a kitchen helper, preschool substitute teacher, and retail clerk. She alleges a closed period of disability from September 1, 2015 to July 4, 2017. Plaintiff was 49 years old on September 1, 2015 and 51 years old on July 4, 2017. Plaintiff's date last insured for Title II SSDI benefits is December 31, 2020.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749

F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) improperly assessing the medical opinion evidence; 2) failing to provide specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her symptoms and limitations; and 3) failing to conduct an adequate analysis at Step Four regarding Plaintiff's ability to perform past relevant work.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) and § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following:

1) Plaintiff has the following "severe" medically determinable impairments: degenerative disc disease and anxiety;

2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1;

3) Plaintiff has the Residual Functional Capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she is limited to frequent handling and fingering with the right upper extremity; she can perform occasional postural activity; she should avoid concentrated exposure to hazards and vibrations; and she would be off task less than 10% of the workday;

4) Plaintiff's RFC allows her to perform her past relevant work as a kitchen helper, preschool substitute teacher, and retail clerk.

Accordingly, the ALJ concluded that Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need

not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a); 416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(d); 416.913(d). In order to discount the opinion of a non-acceptable medical source, the ALJ must offer germane reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).[1]

It appears Plaintiff first saw Amy Turner, PA-C, in November 2014. Plaintiff reported control of her depression anxiety symptoms and was only taking half of her clonazepam tablets once per month when she was feeling very anxious. She was not exercising because of chronic low back pain. (AR at p. 283). In May 2015, Plaintiff saw Turner for "worsening back pain, mostly over the right thoracic area." (AR at p. 288). In July 2015, Turner referred the Plaintiff for physical therapy regarding her "[c]hronic, intermittent thoracic back pain." (AR at p. 296). Turner provided the Plaintiff with a note so she could rest for the next week and not have to lift in excess of 10 pounds in her job as a kitchen assistant. (*Id.*). Plaintiff underwent a physical therapy assessment in late August of 2015. Plaintiff's pain increased with left side bending, right rotation, and a little with extension. Palpation of Plaintiff's muscles revealed taut bands and trigger points in the thoracic paraspinal muscles from T7 through T12. (AR at p. 298).

---

[1] For claims filed on or after March 27, 2017, physician assistants are now considered "acceptable medical sources." 82 Fed. Reg. 5844 (Jan. 18, 2017).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

In January 2016, Turner addressed Plaintiff's "history of generalized anxiety disorder," in addition to her chronic back pain. (AR at p. 306). Turner noted that Plaintiff had been on Paxil for years and "takes clonazepam very sparingly only as needed for severe anxiety/panic attacks . . . about 4 times per month." (*Id.*). Turner further noted that Plaintiff had started a new job three weeks ago and was working in retail. (*Id.*). Plaintiff was taking ibuprofen consistently for her back pain. (*Id.*). Plaintiff expressed a fear of driving and had placed a call to Catholic Family and Child Services to start therapy for her anxiety. (AR at p. 307).

In March 2016, Plaintiff reported to Turner that she had a severe panic attack over a weekend and called emergency medical services, but did not go to the hospital Plaintiff indicated she was experiencing increasing panic attacks, requiring her to take clonazepam five times in the past couple weeks, and that she was having trouble sleeping due to anxiety. (AR at p. 308).

In April 2016, Plaintiff reported to Turner that she was experiencing three panic attacks a week, with her anxiety being most pronounced around driving and at bedtime. (AR at p. 309).

As early as November 2014, Plaintiff was seen at Water's Edge Pain Clinic for back pain. (AR at p. 389). Plaintiff had a sacroiliac joint injection in April 2015. (AR at p. 331) and lumbar transforaminal epidural steroid injections in August and October 2016 (AR at pp. 476 and 482). Plaintiff was seen at the pain clinic at various times from 2014 to 2017 by Juan Ruiz Hurtarte, M.D., for chronic thoracic back and sacroiliac pain. (AR at pp. 357-59; 373-391; 476-492; 623-639).[2] In November 2016

---

[2] Some of Dr. Hurtarte's notes indicate that Plaintiff denied any impairment in driving. (AR at pp. 480, 486 and 490). It is not clear, however, if Plaintiff was only denying impairment as a result of back problems, as opposed to anxiety

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

and again in January and March 2017, Dr. Hurtarte noted that Plaintiff consistently tested high for anxiety and depression and recommended Plaintiff be treated for these issues. (AR at pp. 627; 630-31; 634). In April 2017, Plaintiff underwent a health and behavior assessment at the pain clinic. (AR at pp. 640-43).

In January 2017, Plaintiff returned to see PA-C Turner requesting her to "fill out paperwork for temporary versus permanent disability secondary to chronic back and neck pain." (AR at p. 646). Turner noted that Plaintiff had been followed at Water's Edge for her pain; three injections had been tried and failed; over the counter medicines had failed as had meloxicam; and Plaintiff had recently been prescribed diclofenac without much improvement. (AR at p. 646). Plaintiff reported her pain was more severe with sitting or standing for prolonged periods of time and she needed to change positions frequently. (*Id.*). She also reported that lifting in excess of ten pounds repetitively could be painful. (*Id.*).

PA-C Turner completed a "Medical Report" at that time in which she opined Plaintiff had the ability to lift and carry 10 pounds on an occasional basis; the ability to lift and carry less than 10 pounds on a frequent basis; the ability to stand and walk

---

problems. Moreover, the ALJ did not cite this as a reason for discounting Plaintiff's testimony about her mental health symptoms and limitations.

There was almost a year's gap in Plaintiff's treatment at the pain clinic, as noted by Dr. Hurtarte. (AR at p. 489). No explanation was offered for this, but this was not a reason cited by the ALJ for discounting Plaintiff's testimony about her physical symptoms and limitations. Indeed, the ALJ's decision makes no mention of Dr. Hurtarte's treatment of Plaintiff.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

for about three hours in an eight hour workday; and the ability to sit for about two hours during an eight hour workday. (AR at p. 544). Turner indicated Plaintiff needed to be able to shift at will from sitting or standing/walking (*Id.*), and that she would be off task periodically throughout the workday, although Turner did not specify how much. (AR at p. 545). Turner opined that although it was "possible" Plaintiff could perform light work, sedentary work would be "ideal." (*Id.*). Finally, Turner indicated that if Plaintiff were currently attempting to work a 40-hour per week schedule, she would on average miss two days a month due to her impairments. (AR at p. 546). For reasons unknown, Water's Edge pain clinic declined to fill out the "Medical Report." (AR at p. 646).

The ALJ gave "little weight" to Turner's opinion, finding there was "no support or explanation provided for her opinion." (AR at p. 24). There was, however, plenty of support for Turner's opinion from her own treatment notes as discussed above, in addition to the treatment notes from the pain clinic. According to the ALJ, the record showed that Plaintiff "was doing well with controlled symptoms" and that she "returned to working in childcare within a few months of this evaluation, caring for two-year olds, which exceeds [her] less than sedentary restrictions." (*Id.*). The record which the ALJ cites in support of his assertion that Plaintiff "was doing well with controlled symptoms" pertains to Plaintiff's anxiety symptoms (AR at pp. 526 and 556) and indeed, one of the reports (AR at p. 556) is from November 2017, several months after the claimed closed period of disability. Furthermore, it was actually six months from Turner's January 2017 evaluation when Plaintiff returned to work full-time in childcare. Moreover, without knowing the physical demands of that job as actually performed, it is unclear whether it exceeded the physical restrictions opined by Turner in January 2017.

The ALJ gave "significant" weight to the opinions of the state agency medical evaluators who reviewed the record and concluded Plaintiff was capable of

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

performing light work with some restrictions. According to the ALJ, these evaluators "reviewed the medical evidence of record and explained the basis of their opinions which are consistent with the record." (AR at p. 23). As noted above, the basis for Turner's opinions expressed in her January 2017 evaluation is apparent from her treatment notes and the pain clinic treatment notes. Therefore, the court concludes the ALJ did not provide germane reasons for discounting the physical RFC opinions of Turner, Plaintiff's treating PA-C, in favor of the opinions of non-examining medical evaluators.

Plaintiff started counseling with Catholic Family & Child Service (CFCS) in February 2016. She was diagnosed with generalized anxiety disorder and it was recommended she undergo six weeks of cognitive behavioral therapy (CBT). (AR at pp. 395-402).

In March 2016, upon referral from Turner, Plaintiff was seen for a psychiatric evaluation by Laura DeCamp, Pharm. D., at Central Washington Comprehensive Mental Health (CWCMH). Plaintiff indicated she discontinued services with CFCS because she had a desire for medication management services which was unavailable there. (AR at p. 417). Plaintiff reported she had been on anxiety medication since her early 20s. (*Id*.). She scored 20 out of 21 on the GAD-7 Anxiety Questionnaire which is statistically significant for severe anxiety. (AR at p. 419). DeCamp started the Plaintiff on buspirone in addition to the other anxiety medications she was taking which had been prescribed by PA-C Turner (escitalopram, clonazepam and trazodone). (AR at p. 420).

Plaintiff's therapist at CWCMH was Suzanne Damstedt who she saw on a regular basis between May and December 2016 for therapy appointments, which were in addition to Plaintiff's regular medication management appointments at CWCMH. (AR at pp. 417-459; 595-610). In January 2017, Damstedt completed a "Mental Medical Source Statement" in which she opined Plaintiff was moderately limited in

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

her ability to maintain attention and concentration for extended periods, and in her ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. "Moderately limited" means unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day. Damstedt also opined that Plaintiff was "severely limited" in her ability to travel in unfamiliar places or use public transportation. "Severely limited" means inability to perform the activity. According to Damstedt, Plaintiff would miss on the average four or more days per month due to her mental impairment. Although Damstedt indicated Plaintiff's impairment would cause her to be off task periodically throughout the workday, she did not specify the percentage. (AR at pp. 541-43). Plaintiff expressed to Damstedt on more than one occasion that her anxiety was most pronounced when it came to driving and that she would avoid driving because of it.

In July 2016, Plaintiff underwent a consultative psychiatric examination by Kirsten Nestler, M.D.. Plaintiff informed Dr. Nestler she had difficulty driving because of her anxiety and avoided driving whenever she could. (AR at p. 461). The doctor diagnosed Plaintiff with an "[u]nspecified anxiety disorder." (AR at p. 464). According to the doctor:

> The claimant states that anxiety is the main impediment to her working at this time[,] but the only activity she stated she avoided due to anxiety was driving. However, she drove herself to [the] clinic today without any difficulty. I suspect she is exaggerating her mental health symptoms. She did not appear objectively depressed and appeared only mildly anxious. She is taking Lexapro which may be helping her anxiety and mood some. She did clearly state that she left her last job of six years due to back pain rather than anxiety. She displayed excellent interpersonal skills today and did not seem to be severely impacted by anxiety at this time. I suspect that she would be able to function in a competitive work environment. Her problems are treatable and she is likely to improve over the next 12 months. She is currently starting outpatient psychotherapy and continuing medication.

(AR at p. 464).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

Dr. Nestler found that essentially Plaintiff suffered from no mental functional limitations that would compromise her ability to work. (AR at pp. 464-65).

The ALJ gave significant weight to Dr. Nestler's opinion "because she examined the Plaintiff and based her opinion on objective findings." (AR at p. 23). The ALJ gave little weight to Damstedt's opinion on the basis that she "simply checked boxes on a form and offered no support or explanation for her opinion." (*Id.*). What the ALJ overlooked, however, was that Damstedt was obviously basing her opinion on months of therapy sessions with Plaintiff and that opinion was corroborated by months of medication management sessions at CWCMH. It was also corroborated by Turner's treatment of Plaintiff for anxiety and panic attacks as discussed above. (See also AR at pp. 510 and 514).[3] Accordingly, the ALJ's reliance on Dr. Nestler's opinion based on a one time examination, uncorroborated by anything else in the record, cannot constitute a "germane" reason for rejecting the opinion of Damstedt.[4] Interestingly, however, Dr. Nestler's assertion that Plaintiff's problems were treatable and likely to improve over the next 12 months was prescient and correct as Plaintiff returned to full-time work in July 2017.

The ALJ did not provide "germane" reasons to reject either PA-C Turner's

---

[3] Plaintiff continued with regular treatment at CWCMH in 2017 through the date on which she returned to full-time work (July 2017). (AR at pp. 548-592).

[4] As the ALJ noted, the non-examining state agency evaluators who reviewed the record concluded Plaintiff's anxiety was not even a "severe" impairment (AR at p. 23), a conclusion with which the ALJ did not agree. Arguably, Dr. Nestler essentially concluded Plaintiff did not suffer from a "severe" anxiety disorder.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

opinion regarding Plaintiff's physical RFC, nor therapist Damstedt's opinion regarding Plaintiff's mental RFC.

**TESTIMONY RE SYMPTOMS AND LIMITATIONS**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*.

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because she reported improvement in her symptoms with medications. (AR at p. 21). There is no doubt, as recounted by the ALJ in his decision (AR at pp. 21-22), that Plaintiff's condition continued to improve, ultimately resulting in her ability to return to full-time work. But this is not a clear and convincing reason to reject Plaintiff's testimony that she was limited as asserted by her and by PA-C Turner and therapist Damstedt during the closed period at issue.

The ALJ found Plaintiff's failed work attempt at the Salvation Army in late

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

2015/early 2016, while not constituting substantial gainful activity, was inconsistent with the limitations asserted by her.  It was not inconsistent, however, and if anything, supports Plaintiff's assertion about her limitations during the closed period at issue, as corroborated by PA-C Turner and therapist Damstedt.  Plaintiff quit after four months at the job.  She testified she was missing work a couple of times a week due to back pain and anxiety (AR at pp. 41-42) which it was she also reported to CFCS during her intake assessment in February 2016. (AR at p. 395).

The ALJ found Plaintiff's other daily activities were inconsistent with her allegations of disabling symptoms.  (AR at p. 22).  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  Rather, "[i]t is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility." *Id*.  Daily activities therefore "may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of h[er] day engaged in pursuits involving physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  To conclude that a claimant's daily activities warrant an adverse credibility determination, the ALJ must make specific findings relating to the daily activities and the transferability of the activities to the workplace. *Id*.

The activities cited by the ALJ- watching television, cooking, grocery shopping, driving periodically, exercising- are not inconsistent with Plaintiff's asserted limitations during the closed period at issue.  Indeed, Plaintiff's increasing

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

of her driving time in September 2016 and January 2017, increasing of her exercise time in February and March 2017, and her beginning of part-time work at the childcare center in April 2017, where she would ultimately start full-time work in July 2017, is entirely consistent with the gradual improvement in her symptoms as testified to by the Plaintiff and corroborated by her treating medical providers.

The ALJ did not provide "clear and convincing" reasons for discounting Plaintiff's testimony regarding her symptoms and the extent of her physical and mental limitations during the closed period at issue.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id.*, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id.* at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882,

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 15

887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

The ALJ failed to provide legally sufficient reasons for rejecting PA-C Turner's opinion that Plaintiff was limited to sedentary work. As all of Plaintiff's past relevant work, as testified to by the VE, involved light work (AR at pp. 49-50), Plaintiff was unable to perform that work during the closed period at issue.

Asked by the ALJ about the availability of work to an individual who is absent from work twice a month, including days on which the individual is tardy or leaves work early, the VE testified no work would be available. (AR at p. 51). Therapist Damstedt opined Plaintiff would, on average, miss four or more days of work per month due to her anxiety and panic attacks. PA-C Turner opined Plaintiff would, on average, miss two days of work per month. As discussed above, the ALJ did not provide legally sufficient reasons for rejecting either Damstedt's or Turner's opinion.

There are no outstanding issues that must be resolved, and there is no question the Plaintiff is disabled. Accordingly, the court will depart from the ordinary remand

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 16**

rule and remand for an immediate award of benefits.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 13) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 14) is **DENIED**.

Pursuant to sentence four of 42 U.S.C. §405(g) and § 1383(c)(3), this matter is **REMANDED** for immediate payment of disability benefits to the Plaintiff for the period from September 1, 2015 to July 4, 2017.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and **close the case**.

**DATED** this ___24th___ day of October, 2019.

*s/Lonny R. Suko*
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 17**